UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| UNITED STATES OF AMERICA, | Case No. 4:19-cr-00278-DCN |
|---|---|
| Plaintiff, | |
| v. | **MEMORANDUM DECISION AND ORDER** |
| ANDREW WELCH, | |
| Defendant. | |

# I. INTRODUCTION

Pending before the Court is Defendant Andrew Welch's Motion to Dismiss Indictment. Dkt. 16. Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds the decisional process would not be significantly aided by oral argument, the Court will address the motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). For the reasons outlined below, the Court finds good cause to DENY Welch's motion.

# II. BACKGROUND[1]

In April 2014, Welch filed for bankruptcy. The United States of America ("Government") alleges that Welch hid hundreds of thousands of dollars in assets during the bankruptcy proceedings. Assistant United States Attorney ("AUSA") Ann Wick sent Welch a target letter in 2016 informing him of the Government's investigation of his

---

[1] The facts in this section are taken from the parties' briefing and, unless otherwise stated, are undisputed.

alleged wrongful acts during the bankruptcy proceedings. Matthew Kinghorn, Welch's attorney at the time, requested discovery and convinced Wick to delay the grand jury's consideration of Welch's case. Kinghorn also independently investigated the case, communicating with Welch, Wick, and the attorney who represented Welch during his bankruptcy.

In January 2018, Welch alleges that Kinghorn and Wick discussed a misdemeanor plea agreement. According to Welch, Kinghorn indicated to Wick that Welch would be willing to take a misdemeanor offer but would refuse a felony offer because he was finishing up nursing school and a felony would affect his ability to be licensed. Welch further alleges that over the following months, Kinghorn and Wick exchanged emails about possible misdemeanor reductions, culminating in Wick telling Kinghorn that "her people" were okay with a misdemeanor charge on August 9, 2018. Dkt. 16, at 4. Kinghorn accepted the offer and Wick stated she would draft the plea agreement and send discovery. Discovery arrived on November 5, 2018, but Wick never sent a plea agreement.[2]

In January 2019, Kinghorn discovered that a grand jury was being assembled and that AUSA Sean Mazarol had taken over the case. At this time, Welch had just graduated from nursing school and was proceeding to take his boards.

The Government filed an indictment on August 27, 2019, alleging two counts of Bankruptcy Fraud and two counts of Concealment against Welch regarding his bankruptcy.

---

[2] The Government disputes the fact that there was ever a plea agreement. However, the Government does not specify which facts regarding the plea agreement it disputes, such as Kinghorn's alleged acceptance of Wick's offer or the fact that discovery arrived November 5, 2018. Regardless, as will be discussed, specific disputations are unnecessary in this case as the Court is able to rule on the motion without them.

On September 5, 2019, the Court appointed Welch CJA counsel David Parmenter and Kinghorn was no longer involved with the case. Welch filed the instant motion on January 9, 2020, moving the Court to dismiss the indictment in its entirety based on the Government reneging on the purported plea agreement or, in the alternative, requesting the Court enforce the plea agreement and reduce Welch's charges to a misdemeanor.

### III. ANALYSIS

In his motion, Welch alleges that the Government reneged on the plea agreement when Wick did not send the plea agreement and Mazarol decided to pursue charges. Welch suggests that this is grounds for dismissal under Federal Rule of Criminal Procedure 12(b)(3)(A).[3] The Government contends that (1) there was never a valid plea agreement; (2) if there was one, it was not binding; and (3) Welch did not detrimentally rely on the alleged plea agreement. The Court will analyze each argument in turn.

**A. Existence of Plea Agreement**

In order to renege on a plea agreement, or in order to enforce a plea agreement, it goes without saying there must be a valid plea agreement in the first place. The moving party bears "the burden of pleading and persuading the trier of fact of the existence of the

---

[3] This rule states:

> The following defenses, objections, and requests must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits . . . (A) a motion alleging a defect in instituting the prosecution, including: (i) improper venue; (ii) preindictment delay; (iii) a violation of the constitutional right to a speedy trial; (iv) selective or vindictive prosecution; and (v) an error in the grand-jury proceeding or preliminary hearing.

Fed. R. Crim. P. 12(b)(3)(A).

plea bargain agreement." *United States v. Helmandollar*, 852 F.2d 498, 502 (9th Cir. 1988).

Here, Welch asserts that Kinghorn and Wick discussed and agreed to a misdemeanor plea. However, Welch has provided no supporting documentation, declarations, or affidavits to back this assertion. Welch could have provided an affidavit himself, or sought one from Kinghorn or Wick, as evidence that there was an agreement, or he could have attached as an exhibit the emails in which Kinghorn and Wick discussed the plea agreement. But all Welch did was rely on argument alone that Kinghorn and Wick put together a plea deal.

The Court finds this insufficient to prove the existence of a plea agreement. Nobody with personal knowledge has attested to the existence of an agreement. Alleged communications between two opposing counsel, neither of whom have been involved with the case since before Welch filed the instant motion, is both inadmissible as hearsay and inadequate to prove that a plea agreement existed.

## B. Any Plea Agreement Would Not Be Binding

It is well settled in the Ninth Circuit that "[a] plea agreement that has not been entered and accepted by the trial court does not bind the parties." *United States v. Kuchinski*, 469 F.3d 853, 858 (9th Cir. 2006) (citing *United States v. Miguel,* 368 F.3d 1150, 1155 (9th Cir. 2004); *United States v. Alvarez-Tautimez,* 160 F.3d 573, 576-77 (9th Cir.1998); *United States v. Savage,* 978 F.2d 1136, 1138 (9th Cir.1992)). In *Kuchinski*, the defendant "insist[ed] that once the government entered into a plea agreement, it was absolutely bound to the agreement's terms, even before the district court accepted the agreement." *Id.* at 857. The Ninth Circuit did not mince words when it came to defendant's

argument: "He is wrong." *Id.* The Ninth Circuit quickly concluded that, because the district court had not accepted the plea, the government was not bound by it. *Id.* at 857–58.

Here, even if Welch could show the existence of a plea agreement, he has not argued that the Court accepted it. Nor could he, as the Court has not accepted any pleas in this case. Thus, as in *Kuchinski*, the Government is not bound by any purported plea agreement.

**C. Detrimental Reliance**

There is an exception to the general rule that a plea agreement is not binding if a court has not accepted it. Courts "recognize that where detrimental reliance is shown, the government may be bound even before the district court accepts the agreement." *Id.* at 858; *see also Savage*, 978 F.2d at 1138 (recognizing a "detrimental reliance exception"). A defendant's detrimental reliance "must be reasonable." *McKenzie v. Risley*, 801 F.2d 1519, 1527 (9th Cir.1986), vacated in part on other grounds, 842 F.2d 1525 (9th Cir.).

In assessing the reasonableness of detrimental reliance, courts generally assess the harm or prejudice to a defendant's constitutional rights or defense. *See, e.g.*, Wayne R. Lafave et al., Criminal Procedure § 21.2(f) (4th ed. 2015) ("Providing information to government authorities, testifying for the government, confessing guilt, returning stolen property, making monetary restitution, failing to file a motion to have charges presented to a grand jury, submitting to a lie detector test and waiving certain procedural guarantees have all been held to constitute acts made in detrimental reliance upon a prosecutor's breached promises.") (internal quotations omitted). In *Savage*, for instance, the Ninth Circuit noted that the defendant did not detrimentally rely on a plea agreement because "he did not provide any information or other benefit to the government based on the

agreement." 978 F.2d at 1138. Similarly, in *McKenzie*, the Ninth Circuit rejected the defendant's argument "that his attorneys' disclosure of the weaknesses they perceived in the state's case and of the names of their FBI witnesses, pursuant to the alleged plea agreement, was detrimental to his defense," because investigators developed the evidence independently. 801 F.2d at 1527–28.

The cases Welch relies on are good examples of this principle. In *United States v. Carter*, the defendant incriminated himself by pleading guilty to a misdemeanor and provided other information to the Government in exchange for a promise from the AUSA that he would not be prosecuted anywhere else for any other crimes other than the one he plead to. 454 F.2d 426, 427 (4th Cir. 1972). The Government later prosecuted him in a different district. *Id.* The *Carter* court held that when a defendant performs his part of the bargain, the Government is bound by the agreement. *Id.* at 427–28. Likewise, in *United States v. Minnesota Min. & Mfg. Co.*, the defendants voluntarily provided incriminating evidence in exchange for a promise of leniency from the Government. 551 F.2d 1106, 1108 (8th Cir. 1977). However, once the defendants provided the information, the Government prosecuted the defendants more severely than it had agreed to. *Id.* The *Minnesota* court found that, because the "defendants fully discharged their obligations under the agreement, the Government [was] bound to fulfill its responsibility under the agreement." *Id.* at 1111.

Here, Welch states that he has been attending nursing school over the past couple of years, and that in the early months of 2019 he graduated nursing school and was preparing to take the board exams. Welch argues that he pursued his schooling in reliance on the purported plea agreement because a felony conviction might negatively impact his

nursing license. Welch also suggests that the pressure of this prosecution has caused him severe anxiety and stress.

These arguments fall short of reasonable detrimental reliance. Welch has not shown that he has performed any obligation under his alleged plea agreement. Nor has Welch argued that he provided any information or benefit to the Government. Instead, Welch relies solely on the pragmatic notion that a felony will impact his career more than a misdemeanor would. Whereas it is likely this notion is correct, it is not enough to show the Welch detrimentally relied on the agreement under the law.

Furthermore, the evidence shows that Welch was well aware that the Government was investigating his alleged wrongful acts long before he completed nursing school. The Government notified Welch of its investigation in 2016. Welch claims that the alleged plea agreement was not made until August 9, 2018, and that he did not graduate nursing school until January 2019. This means that Welch began or continued to attend nursing school after learning about the investigation in 2016 for at least a year and a half before Kinghorn and Wick reached the purported agreement. It is impossible, then, to say that Welch relied on any agreement for this portion of his schooling because no promise had been made (again, Welch has failed to provide any evidence that there was any plea agreement in the first place, but the Court is analyzing the same *arguendo*).

## IV. CONCLUSION

Welch has failed to provide any evidence to support his argument that Kinghorn and Wick formed a plea agreement. Further, even if Welch had convinced the Court that such an agreement existed, it would not be binding because the Court never accepted it.

Additionally, that Welch continued to attend nursing school and chose to pursue the board exams is insufficient to show that he detrimentally relied on the purported agreement.

## V.  ORDER

**IT IS HEREBY ORDERED:**

1. Welch's Motion to Dismiss the Indictment (Dkt. 16) is DENIED.

DATED: April 7, 2020

David C. Nye
Chief U.S. District Court Judge